CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

September 25, 2024
LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LARRY ALLEN YOUNG, JR., | ) | |
| Plaintiff, | ) | Case No. 7:23-cv-00261 |
| | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | |
| KILINE MADISON, *et al.*, | ) | By:  Hon. Thomas T. Cullen |
| | ) |        United States District Judge |
| Defendants. | ) | |

Plaintiff Larry Allen Young, Jr., proceeding *pro se*, brought this action pursuant to 42 U.S.C. § 1983 against Defendants Kiline Madison, Donald Hawkins, Evan Baker, and Joshua Sparks. Defendants have jointly moved for summary judgment. (*See* Defs.' Mot. [ECF No. 28].) For the reasons discussed below, the Court will grant Defendants' motion.

### I.

Plaintiff filed this action in the Eastern District of Virginia on May 3, 2023. (*See* Compl. [ECF No. 1].) A few days later, the case was transferred to this Court. (Mem. Op. [ECF No. 3].) The facts set forth herein are taken from the pleadings, including the complaint, and declarations and exhibits filed by Plaintiff and defendants. (*See* Ex. A, Declaration of Aaron Carver (Carver Decl.) [ECF No. 29-1]; Ex. B, Continuance Order [ECF No. 29-2]; Ex. C, Hawkins Decl. [ECF No. 29-3]; Pl.'s Ex. A1, A2 [ECF No. 31].)

#### A. Background

In February 2022, Plaintiff committed several crimes, including breaking into a house in Orange, Virginia, stealing a firearm from the house, murdering an individual, and attempting

to abduct another person on the University of Virginia campus. Plaintiff also faces charges for allegedly molesting his stepchildren. Prior to his arrest, Plaintiff had worked as a University of Virginia Police Officer and a Deputy Jailer at the Central Virginia Regional Jail ("CVRJ"). (Young Decl. ¶ 42.)

### B. Plaintiff's Allegations

Plaintiff alleges that on May 19, 2022, Defendant Hawkins transported him from the Albemarle Charlottesville Regional Jail ("ACRJ") to the Orange County Courthouse for a hearing. (*See* Compl. 11.) According to Plaintiff, upon arriving at the Orange County Courthouse, he observed Defendant Baker, with whom Plaintiff had previously worked with at CVRJ. (*Id.*) About four months prior to the hearing, while they were both working at CVRJ, Plaintiff claims he observed Baker and several other deputies beat a fully restrained black inmate in a mop closet, spit on him, and call him a racial slur. (*Id.* at 11–12.) Plaintiff alleges that this prompted him to quit his job at CVRJ and that he attempted to report the beating along with other misconduct. (*Id.*) Plaintiff further alleges that he was subjected to blackmail and extortion after quitting and attempting to report the alleged assault. (*Id.*) Plaintiff also claims that Defendant Baker had recently signed a protective order that Plaintiff's wife had obtained against Plaintiff. (*Id.*)

Plaintiff alleges that, on May 19, 2022, as he was being escorted to the courtroom, Defendant Baker told him, "The shit you pulled don't work around here like UVA, you couldn't keep quiet, now look. I got your job, you will never see your daughter again." (*Id.* at 13.) Plaintiff further claims that Defendant Baker made a derogatory comment about Plaintiff's wife. (*Id.*) After the hearing, Plaintiff claims he was returned to a holding cell, where

someone had written an offensive comment related to the incident at CVRJ on a white board by his cell door. (*Id.*) Defendants Baker and Sparks, both former CVRJ deputies, allegedly laughed at Plaintiff from their office across the hall. (*Id.*)

Plaintiff also alleges that, after he was briefly held in the cell, Defendant Hawkins escorted him to the courthouse sally port and placed him back in an Orange County Sheriff's Office SUV. (*Id.*) Plaintiff claims that, before exiting the sally port, Hawkins lowered Plaintiff's back window all the way down and that, upon exiting, Plaintiff observed his wife, her family, her ex-husband's family, and the family of a man Plaintiff is "alleged of committing criminal offenses against in Madison County," all waiting for Plaintiff in the courthouse parking lot. (*Id.* at 13–14.) Plaintiff alleges Hawkins slowed the car down as he drove past the families and that the families yelled at Plaintiff, told him to kill himself, photographed him, and spit on him through the window. (*Id.* at 14.)

Next, Plaintiff claims that Hawkins pulled the vehicle over and told Plaintiff that someone wanted to speak to him in private. (*Id.*) Plaintiff claims he then observed Defendant Madison, Police Chief for the Town of Orange, exit a fully marked Town of Orange Police SUV, draw a gun from his holster, lean through the window where Plaintiff was sitting, and shove the gun into Plaintiff's chest. (*Id.* 15.)

Plaintiff alleges that Madison asked him if he wanted to die or have his daughter killed; he claims he was so afraid that he could not speak and defecated himself. (*Id.* at 15–16.) Plaintiff alleges that Madison then pulled him out of the vehicle, pushed him against the SUV's quarter panel, and told him, "Your house, your vehicle, your property, your money, and your daughter, belong to your wife now. Your wife and kids already spoke to Orange County Child

Protective Services, and my Investigator Adrienne Beale. When the DNA comes back I am going to call your mom and tell her." (*Id.* at 16–17.) Madison allegedly continued, "You are not going to talk to UVA about being crazy (referencing [Plaintiff's] court ordered psychiatric evaluation), you are going to write confessions and plead guilty in Orange, Madison, and Albemarle Counties. Do you understand me, or does your daughter need to be involved?" (*Id.* at 17.) Plaintiff claims that when he pleaded for his daughter to be left alone, Madison said, "[Y]ou have my word, plead guilty, keep your mouth shut, write the confessions. If you do that, she will be fine." (*Id.*) Plaintiff ultimately pleaded guilty to the criminal charges against him. (*Id.* at 17–20.)

Based on these allegations, Plaintiff brings the following claims: (i) an Eighth Amendment claim against Defendants Madison, Hawkins, Baker, and Sparks for the alleged infliction of cruel and unusual punishment; (ii) a Fourteenth Amendment claim against Defendant Madison for violation of Plaintiff's rights to equal protection and due process; and (iii) a Fourth Amendment claim against Madison, Hawkins, Baker, and Sparks for seizing Plaintiff "in an unreasonable manner." (*See id.* at 20–24.) Plaintiff seeks $2,000,000 in damages and an injunction to prohibit Defendants from transporting him in the future. (*Id.* at 24.)

### C. Defendants' motion and evidence

Defendants agree that Plaintiff was in the custody of ACRJ on May 19, 2022, and that he appeared for a hearing in Orange County Circuit Court on that date. (Carver Decl. ¶ 3; Hawkins Decl. ¶ 7.) Critically, however, Defendants have offered testimony and an order from the presiding Circuit Court judge showing that Plaintiff appeared for the hearing by video and "was not transported" from the jail. (Hawkins Decl. ¶ 7; Defs.' Ex. B.) Defendants have also

produced a transport log for May 19, 2022, showing that Plaintiff was not among those transported by the Orange County Sheriff's Office that day (Hawkins Decl. ¶ 8) and sworn testimony that there is no record of Plaintiff being transported from ACRJ on that date (Carver Decl. ¶¶ 5–6.)

### D. Plaintiff's Response

In response, Plaintiff insists the events described in the complaint actually occurred but admits he may have misremembered the exact date. (*See* Pl.'s Resp. 2 [ECF No. 31].) He provides state court docket sheets seemingly showing that a transportation order was entered on April 26, 2022, for May 19, 2022 transport. (*See id.*; Pl.'s Exs. A1, A2.) Plaintiff claims he based his complaint off of these records. (Pl.'s Resp. 2–4.)

### II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249−50 (internal citations omitted).

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

Although the court does not make credibility determinations when adjudicating a motion for summary judgment, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### III.

Defendants have provided admissible evidence that the events described in Plaintiff's complaint did not happen because Plaintiff appeared for his May 19, 2022 hearing by video and was not transported to the Orange County Courthouse. (*See* Carver Decl. ¶¶ 5–7; Hawkins

Decl. ¶¶ 4–8; Defs.' Ex. B.) Plaintiff has not offered any admissible evidence to rebut these facts or to create a genuine issue of fact for trial.

Plaintiff argues that the date of the alleged incident is in dispute, and thus, there is a genuine issue of fact for trial. But Plaintiff's response is an unsworn brief, and he has not provided an affidavit or declaration swearing to his version of the events under penalty of perjury. *See* Fed. R. Civ. P. 56(c)(4) (providing that a party can oppose summary judgment with an "affidavit or declaration . . . made on personal knowledge"). Consequently, Plaintiff's response "fails to meet the most basic requirements of form required by Rule 56(c)(4)" and cannot, itself, create a genuine dispute of fact. *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 358 (4th Cir. 2007). Plaintiff wrongly asserts that, "at the time [he] filed this complaint, [he] swore under penalty of perjury that the information was correct" (Pl.'s Resp. at 3), but Plaintiff's complaint, like his summary judgment response, was unsworn. (*See generally* Compl.) The only evidence Plaintiff offers are the docket sheet printouts, which do not contain the language of any orders entered, and—contrary to Plaintiff's assertion—do not decisively establish that he was transported on May 19, 2022. (*See* Pl.'s Exs. A1, A2.) At best, these documents reveal that a hearing was set and a transport order was entered. (*See id.*) But in light of Defendants' ample evidence that Plaintiff was never actually transported to the courthouse—namely the order of the Orange County Circuit Court, which twice states that Plaintiff "appeared by video" and plainly states he "was not transported"—no reasonable jury, even viewing the evidence in the light most favorable to Plaintiff, would find that Plaintiff was actually transported on that date. (*See* Defs.' Ex. B; Carver Decl. ¶ 6 ("There is no record at all

of Young being transported from ACRJ on May 19, 2022."); Hawkins Decl. ¶¶ 4–5 (stating that he is aware of the allegations in the complaint and that "[n]one of this happened").)

Finally, Plaintiff's complaint claims the alleged constitutional violations took place on May 19, 2022. (*See* Compl. 11.) Plaintiff has not offered any evidence showing that the events actually took place on some other date, nor has he amended his complaint to put Defendants on notice of any claim based on events occurring on a different date or at a different time. Plaintiff cannot amend his complaint through briefing after being confronted with evidence that is damaging to, and in this case dispositive of, his case. *See Barclay White Skansa, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008) (explaining that a plaintiff may not amend their complaint through briefs in opposition to a motion for summary judgment); *Dameium Dwight Burroughs v. Dorsey Run Corr.*, Civil Action No. GLR-23-1223, 2024 WL 3832346, at *1 n.4 (D. Md. Aug. 15, 2024) (stating that a plaintiff is "bound by the allegations contained in the complaint and cannot, through the use of motion briefs, amend the complaint").

Because Plaintiff has not offered sufficient evidence from which a reasonable jury could find in his favor, Defendants are entitled to summary judgment.

The Clerk is directed to forward copies of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 25th of September, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE